SCHMIDT v. MICHIGAN COAL & MINING CO.

1. TRIAL—APPEAL AND ERROR — DIRECTING VERDICT — EVIDENCE OF NEGLIGENCE.

In an action for injuries caused by defendant's alleged negligence, the court, in reviewing a judgment on a verdict directed for defendant, must give to the plaintiff's evidence the most favorable construction it will bear in his favor.

2. NEGLIGENCE—DUTY TO LICENSEES OR TRESPASSERS—INVITATION TO ENTER UPON PREMISES—QUESTIONS OF LAW AND FACT.

Where a miner, injured in an explosion, had applied for work to defendant's pit boss, who told him to return on a subsequent day, when he again went and made application to defendant's superintendent who referred him to the pit boss, whom he then attempted to find on defendant's premises, it is a question of fact for the jury whether an express or implied invitation to be on the premises might not be inferred from the conversation.

3. SAME—DUTY TO TRESPASSERS OR LICENSEES—WORKMAN SEEKING EMPLOYMENT.

After the owner of premises is aware of the presence of a trespasser or licensee, or if, in the exercise of ordinary care, he should know of his presence, it is his duty to use ordinary care to prevent injury to him arising from active negligence.

Error to Bay; Collins, J.   Submitted October 19, 1909. (Docket No. 125.)   Decided December 30, 1909.

Case by George Schmidt against the Michigan Coal & Mining Company for personal injuries. A judgment for defendant on a verdict directed by the court, is reviewed by plaintiff on writ of error. Reversed.

*Elbert V. Ingersoll*, for appellant.

*Weadock & Duffy*, for appellee.

McALVAY, J.   This suit was brought by plaintiff against defendant company to recover for personal injuries

received by the explosion of a compressed air tank located in the tipple at defendant's mine, claimed to have been caused by the negligence of defendant's agents and representatives. Plaintiff is a miner, and went to defendant's mine on Saturday, July 7, 1906, seeking employment. He saw Joseph Watton, the pit boss, at the tipple, which is the building or construction over the mouth of a mine shaft supporting the cables which operate the cages up and down into the mine, and asked him for work. He was told that the old men had not yet all returned; that he did not know whether or not there would be a place for him; that the mine would start up on Monday following, and requested him to return at that time when he could tell him more about it. The pit boss had charge of the men in the mine, and it was the custom at the mines in Bay county for men seeking employment to see the pit boss as to whether there was employment to be had. Plaintiff returned on Monday following, arriving at the company's office about half past 3 in the afternoon. He asked the superintendent as to his prospect of getting work. He was told by him substantially the same as the pit boss, Mr. Watton, had told him on Saturday, and added, "I couldn't tell you unless some one has quit, then I could give you a place;" that he did not know how it was down below; that Mr. Watton was taking care of that. The superintendent and plaintiff were the only persons present and left the office at about the same time. Plaintiff went to the tipple for the purpose of seeing Watton, and seated himself on a keg near the shaft to wait for him as he came up at 4 o'clock. While he sat there the superintendent came in there near him. The engineer, the superintendent's son, and other employés of defendant were in and out the tipple, during which time three car loads of coal were hoisted out, and some bags of oats for the mules were let down into the mine. In the tipple there was an air tank or receiver, in which air for use in operating the cutting machines in the mine was compressed by an engine in the engine room,

which was under the control and operation of the engineer. At about 4 o'clock an explosion at this air receiver apparatus occurred which tore out all its connections and threw it over.   Plaintiff was struck by a piece of pipe, on his left arm, which was mangled, and the forearm torn off, and on account of these injuries his arm was amputated.   The negligence alleged in the declaration, and which plaintiff claims was shown by the testimony, was the improper regulation of the safety valve on the compressed air tank; the failure of the engineer to shut off the compressed air apparatus 5 or 10 minutes before quitting time; and negligence of the engineer in leaving the engine room at quitting time and assisting in loading the oats.   It appeared from the testimony that the machines in the mine, called cutting machines, which were run by compressed air, were usually stopped from 5 to 10 minutes before quitting time, and then the engineer would shut down the engine running the compressor.

At the close of plaintiff's case defendant moved that the court direct a verdict upon the grounds, among others, that plaintiff had shown no invitation, express or implied, to come upon these premises at this place, and was a trespasser or a mere licensee, and could not recover.   The court granted the said motion upon these grounds, and a verdict was directed, and a judgment entered accordingly.   These are the questions argued by counsel and discussed in the briefs before us.   Plaintiff contends that the direction of this verdict was clearly against the evidence in the case, and that the action of the court was erroneous.

The court said in his decision upon the first ground:

" Now, upon the point upon which I charge you, there is not a dispute in the evidence.   I take the evidence just as the plaintiff gives it, and under that evidence I am bound to say to you that, as a matter of law, the plaintiff is not entitled to recover."

The court further found that plaintiff was in the tipple

as a licensee, on his own business and not on any business of the company, and therefore he could not recover.

Plaintiff is entitled to have the evidence presented by his case given the most favorable construction it will bear in his favor, where a verdict has been directed against him. We are not able to say that, as a matter of law, there was no evidence of an implied invitation to go to the tipple on the day of the accident to consult the pit boss. A custom was shown that the usual thing for miners to do, at the Bay county mines, when seeking employment, was to go to the pit boss. Plaintiff had sought him out and was requested to return on Monday. On that day he went to the office, and from the evidence related by him relative to his conversation with the superintendent, it appears that the pit boss was the one who furnished the information when men were needed in the mines. There was evidence to submit the question to the jury whether an express or implied invitation to go to the tipple and ascertain from the pit boss, might not be inferred from what the superintendent said. There is abundant authority to sustain the contention that where there is evidence, though contradicted, from which an invitation might be inferred, it is a question for the jury. *Pelton* v. *Schmidt*, 104 Mich. 345 (62 N. W. 552, 53 Am. St. Rep. 462); 21 Am. & Eng. Enc. Law (2d Ed.), p. 472; *Mallock* v. *Derby*, 190 Mass. 208 (76 N. E. 721); *Banderob* v. *Railway Co.*, 133 Wis. 249 (113 N. W. 738).

There is another question necessary to be considered. The court held that plaintiff was a licensee, and could not recover, as a matter of law. That question may be before the trial court again upon the new trial.

There was evidence in the case to go to the jury upon the question whether the superintendent knew that plaintiff was at the tipple. The superintendent testified that he was there at least once after plaintiff was at the office. Plaintiff also testified upon the question. The weight of authority would appear to be that after the owner of

premises is aware of the presence of a trespasser or licensee, or if in the exercise of ordinary care he should know of their presence, he is bound to use ordinary care to prevent injury to them arising from active negligence. 21 Am. & Eng. Enc. Law (2d Ed.), p. 473, and cases cited; *Herrick* v. *Wixom*, 121 Mich. 384 (80 N. W. 117, 81 N. W. 333); *Brown* v. *Railroad*, 73 N. H. 568 (64 Atl. 194); 29 Cyc. p. 443. No evidence was offered by defendant. We are satisfied that, from this record as here presented, plaintiff was entitled to have the case submitted to the jury.

For the reasons stated, the judgment is reversed, and a new trial is granted.

GRANT, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.